```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/2/2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CADET FUNDING, LLC,                           :

                    Plaintiff,            :       **REPORT AND**
                                             **RECOMMENDATION**
     -against-                                   :       **TO THE HONORABLE**
                                             **J. PAUL OETKEN** [*]

EUGENE HOOSER,                                 :
                                             11 Civ. 1140 (JPO) (FM)

                    Defendant.            :

------------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

I.  Introduction

        Plaintiff Cadet Funding, LLC ("Cadet") is engaged in the business of litigation funding. (ECF No. 1 ("Complaint" or "Compl.") ¶ 5). It operates through Area Representatives, one of whom was defendant Eugene Hooser ("Hooser"). (Id. ¶ 8). Following Hooser's failure to answer the Complaint, Cadet seeks to recover damages in the amount of $304,982, plus prejudgment interest. (ECF No. 23 ("Inquest Mem.") at 5). For the reasons set forth below, Cadet is entitled to recover this amount.

II. Procedural History

        Cadet commenced this action on February 18, 2011. (See Compl. at 1). Thereafter, service upon Hooser was effected on March 4, 2011. (ECF No. 6). After Hooser failed to respond to the Complaint and an order to show cause, (ECF No. 17),

---

[*] This Report and Recommendation was prepared with the assistance of Amanda K. Lui, a student at Brooklyn Law School.

Your Honor entered a default judgment on December 13, 2011, (ECF No. 21), and directed that the matter be referred to me to conduct an inquest regarding damages (ECF No. 20). By order dated January 24, 2012, I then directed Cadet to serve papers setting forth proof of its damages, as well as proposed findings of fact and conclusions of law by March 19, 2012, and that Hooser respond by April 2, 2012. (ECF No. 22). The order cautioned that, "[i]f no request for a hearing is made by any party, I shall make my report and recommendation on the basis of the papers submitted to me without any oral argument." (Id.). Although Cadet timely filed its inquest papers, (see Inquest Mem.), Hooser failed to file any opposition papers.

III.     Standard of Review

In light of Hooser's default, Cadet's well-pleaded allegations in the Complaint concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y. City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages on the claim, see Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment. See Transatlantic Marine

Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Here, because both requirements have been met, a hearing is unnecessary.

IV. Facts

Cadet's uncontested complaint and inquest papers establish as follows:

A. Parties and Jurisdiction

Cadet is a Delaware limited liability company with a principal place of business in the Southern District of New York. (Compl. ¶ 1). Hooser is a citizen of the State of California. (Id. ¶ 2). The amount in controversy in this action exceeds $75,000. (Id. ¶ 3). The Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

B. Hooser's Dealings With Cadet

When Hooser became a Cadet Area Representative, he entered into an Operating Agreement ("Agreement") dated January 15, 2003. (Inquest Mem. Ex. C).[1] Pursuant to the Agreement, Hooser's duties included contacting and screening potential plaintiffs and their attorneys, negotiating with them, entering into funding agreements on Cadet's behalf, and monitoring and reporting key developments in each case. (Id. ¶ 11). If Cadet agreed to invest in a case, it would transfer the funds directly to the plaintiff or the plaintiff's attorney. (Id. ¶ 13). Later, if the case resulted in a judgment or settlement

---

[1] The copy of the Agreement annexed to Cadet's inquest papers appears to have been signed only by Hooser and a corporation that he controlled. (See Inquest Mem. Ex. C). Nevertheless, it is clear that Cadet considered itself bound by the Agreement since Cadet performed all of the obligations required of it. (See Compl. ¶ 17).

3

that generated a profit for Cadet, the Agreement provided that Cadet would be paid first and would remit twenty-five percent of its profit to Hooser. (Id. ¶¶ 11-12).

Over a period of many months, Cadet funded seventy-seven cases brought to it by Hooser, paying out a total of $783,250. (Id. ¶¶ 15-16). During the course of the relationship, however, Hooser violated the Agreement by "engag[ing] in an elaborate scheme designed to benefit Hooser at the expense of Cadet." (Id. ¶ 18). That scheme had two aspects.

First, "at least 10 of the 77 cases brought to Cadet by Hooser were totally fabricated by Hooser as these cases did not exist." (Id. ¶ 19(a)). Through these fictitious cases, Hooser was wrongfully able to obtain at least $96,000 that Cadet wired to fund the fictitious litigation. (Id.).

Second, in at least thirteen other instances, Hooser induced plaintiffs who had resolved their cases successfully to "pay Hooser or entities controlled by Hooser directly, rather than make payment directly to Cadet." (Id. ¶ 19(c)). The losses sustained by Cadet through this aspect of the scheme amount to $208,982.[2] (See id.).

After the scheme was discovered, Hooser agreed to repay Cadet the $304,982 that he wrongfully obtained, but he has yet to honor that commitment. (See Butler Aff. ¶¶ 7-8.).

---

[2] The Complaint suggests that the losses attributable to Hooser's diversions from real cases were slightly higher than this amount. (Id.). In its subsequent submissions, however, Cadet indicates that Hooser later confirmed that he had diverted $208,982. (See ECF No. 23 (Aff. of Eric M. Butler, sworn on Mar. 15, 2012) ("Butler Aff."), ¶ 2; Inquest Mem. Ex. D at 1.).

4

V.   Discussion

In its Complaint, Cadet alleges that Hooser is liable to it for breach of contract and fraud.

    A.   Breach of Contract

To state a claim for breach of contract under New York law, a complaint must allege: (i) the existence of an agreement; (ii) the plaintiff's adequate performance of that agreement; (iii) a breach by the defendant; and (iv) damages. See Log On Am., Inc. v. Promethean Asset Mgmt. LLC, 223 F. Supp. 2d 435, 451 (S.D.N.Y. 2001) (citing Harsco Corp. v. Segui, 91 F.3d 337, 338 (2d Cir. 1996)); Johnson v. City of N.Y., No. 99 Civ. 0165 (DAB), 2000 WL 377514, at *5 (S.D.N.Y. Apr. 12, 2000). Here, there is no question that Hooser executed the Agreement and that Cadet performed under that Agreement by investing in various law suits. (See Compl. ¶ 11; Inquest Mem. Exs. C, D at 4). Rather than complying with the Agreement, however, Hooser breached its terms through such actions as the creation of fictitious cases that Cadet funded and the misappropriation of funds from legitimate cases to which Cadet was entitled. (Compl. ¶ 19(a)-(c)). Since Cadet sustained substantial losses as a result of the scheme, it clearly has established each required element of its breach of contract claim.

    B.   Fraud

To state a claim for common law fraud in New York, a plaintiff must show: (i) a material representation or omission of fact; (ii) made with knowledge of its falsity; (iii) with scienter or an intent to defraud; (iv) upon which the plaintiff reasonably relied;

5

and (v) such reliance caused damage to the plaintiff. HealthExtras, Inc. v. SG Cowen Secs. Corp., No. 02 Civ. 9613 (RO), 2004 WL 97699, at *1 (S.D.N.Y. Jan. 20, 2004); Morris v. Castle Rock Entm't, Inc., 246 F. Supp. 2d 290, 296 (S.D.N.Y. 2003). Here, Hooser engaged in material misrepresentations and omissions by bringing "totally fabricated" cases to Cadet for funding and failing to report the successful conclusion of cases that were legitimate. (Compl. ¶ 19(a)). Hooser's scheme unquestionably was done with an intent to deceive, and it was reasonable for Cadet to rely upon Hooser, who had agreed to serve as its agent in connection with these matters. (Butler Aff. ¶ 4). Having lost a substantial amount of money by reason of Hooser's actions, Cadet also has established its claim of fraud.

VI. Damages

    A. Compensatory Damages

As noted above, Cadet seeks to recover $304,982 in compensatory damages, consisting of the $96,000 in wire transfers that Cadet made to Hooser for fictitious cases and the $208,982 that Hooser misappropriated from actual cases that had settled or resulted in favorable judgments. There is, however, one preliminary issue that must be addressed. The Agreement contains a provision that requires Cadet to pay Hooser twenty-five perfect of its profit on each case. (See Inquest Mem. Ex. C ¶ 3(b)). In an email in which Hooser essentially admitted his indebtedness to Cadet, (see Inquest Mem. Ex. D at 4), he sought to recover that "Commission" with respect to cases that were legitimate. Cadet's inquest papers are silent as to whether Hooser is entitled to such a set off.

Although this issue is not addressed, it is settled law in New York that an agent "who owes a duty of fidelity to a principal and who is faithless in his performance of his services is generally disentitled to recover his compensation, whether commission or salary." Phansalker v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 299 (2d Cir. 2003) (quoting Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928 (1977)). Moreover, it would not "make any difference" if Hooser were able to show that some of the services that he provided Cadet were beneficial. Id. Hooser consequently is not entitled to the set offs sought in his email.

Without those set offs, Hooser concedes that he misappropriated the following funds belonging to Cadet. (See Inquest Mem. Ex. D at 1.)

| Cases Reported as Paid by Hooser | Amount Reported |
|---|---:|
| King | $28,000 |
| Rosen | 23,125 |
| Vallejo | 2,000 |
| Parrish | 8,000 |
| Galantas | 26,750 |
| Marle | 25,000 |
| Freeman | 24,000 |
| Scurry | 21,750 |
| Miller | 20,357 |
| Davids | 30,000 |
| **TOTAL** | **$208,982** |

In addition, Hooser is liable to Cadet for the $96,000 that he obtained by creating fictitious cases.

7

B.  <u>Prejudgment Interest</u>

Cadet also seeks to recover interest on its damages. (Compl. ¶¶ 24, 29). Under New York law, "[p]rejudgment interest in a breach of contract action is mandated," <u>Gizzi v. Hall</u>, 767 N.Y.S.2d 469, 472 (3d Dep't 2003), so that the "aggrieved party [is made] whole," <u>Spodek v. Park Prop. Dev. Assocs.</u>, 96 N.Y.2d 577, 581 (2001). Pursuant to Section 5004 of the New York Civil Practice and Rules ("CPLR"), Cadet is entitled to recover such prejudgment interest at the rate of nine percent <u>per annum</u>. See CPLR § 5004.

CPLR § 5001(b) provides that prejudgment interest "shall be computed from the earliest ascertainable date the cause of action existed," and, in the event that damages were incurred at various times, "upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR § 5001. In this case, Cadet suggests that interest be calculated from February 17, 2011, the date it filed this suit. (Inquest Mem. at 5). Since all of the damages attributable to Hooser's misconduct were sustained before that date, this is a reasonable approach, which, if anything, works to Hooser's benefit. See <u>De Long Corp. v. Morrison-Knudsen Co.</u>, 14 N.Y.2d 346, 348 n.2 (1964).

Prejudgment interest at the rate of nine percent per annum therefore should be awarded from February 17, 2011 (when the complaint was filed), through December 13, 2011 (when the default judgment against Hooser was entered). For that period, Cadet

is entitled to prejudgment interest at the rate of $75.20 per day ($304,982 x .09 ÷ 365 = $75.20), i.e., a total of $22,560.

VII. Conclusion

For the reasons set forth above, I recommend Cadet be awarded $327,542, consisting of compensatory damages in the amount of $304,982, plus prejudgment interest in the amount of $22,560.

VIII. Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable J. Paul Oetken, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York, 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Oetken. The failure to file timely objections will result in a waiver of those objections for the purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:   New York, New York
         June 29, 2012

                                          _____
                                          FRANK MAAS
                                          United States Magistrate Judge

Copies to:

Edward Weissman, Esq.
Law Offices of Edward Weissman
(212) 937-1529  (fax)

Eugene Hooser
1278 Glenneyre Street
Laguna Beach, California 92651